GARY M. RESTAINO
United States Attorney
District of Arizona
ADAM D. ROSSI
Arizona State Bar No. 028042
BENJAMIN GOLDBERG
New York State Bar No. 5346838
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: adam.rossi2@usdoj.gov
Email: ben.goldberg@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Eric Ridenour,<br><br>    Defendant. | 4:23-mj-01853-N/A-LCK<br><br>GOVERNMENT'S MOTION<br>FOR DETENTION |

The United States of America, by and through its undersigned attorneys, pursuant to 18 U.S.C. § 3142, moves this Court to detain the defendant before trial.

**FACTS:**

This defendant was charged via complaint on May 24, 2023 for maliciously damaging or destroying, or attempt to damage or destroy, by means of fire or an explosive, two buildings in Douglas, Arizona, on May 22, 2023: Saint Stephen's Episcopal Church at 749 11th Street and First Presbyterian Church at 1020 D Avenue, used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce; in violation of Title 18, United States Code, Section 844(i). (ECF Doc. 1)

Douglas, Arizona is a small town in southeastern Arizona located directly on the U.S.-Mexico border, north of Agua Prieta, Mexico. Church Square, located in the town's historic district between 10th and 11th Streets and D and E Avenues, is listed in the record

books as the only block in the nation that contains four different churches: Southern Baptist, Presbyterian, Episcopal, and Methodist. All four churches are historically significant structures built over 100 years ago during the heyday of Douglas' mining operations.

On Monday, May 22, 2023, at approximately 10:38 a.m., the defendant entered Saint Stephen's Episcopal Church and First Presbyterian Church, both located within Church Square, immediately before fires began inside both buildings. An ATF canine ("K9"), trained to alert to the odor of accelerants, alerted to the presence of accelerants at both church fire scenes. Security camera footage was obtained from an adjacent, operating daycare facility with children present at the time of the fires. The footage from the daycare center cameras showed a blue Pontiac Aztek arriving in an adjacent alleyway and parked immediately west of Saint Stephen's Episcopal Church, near the southwest corner wall. At approximately 10:40 a.m., a male subject – later identified as the defendant Eric Ridenour – exited the vehicle and walked north along the wall carrying a plastic bag. The defendant then walked out of view of the camera.

At 10:42 a.m., the defendant is seen walking back south along the wall and towards the vehicle. The defendant then walked in a southeast direction towards the First Presbyterian Church, located just south of Saint Stephen's Episcopal Church and in the same block. Still on foot, the defendant entered the area between the church's hall and classroom buildings and out of view of the camera. At approximately 10:45 am, the defendant reappeared on camera on the northern sidewalk in the 700 block of 10th Street. The footage then shows the defendant jogging north along the western side of the classroom building. At approximately 10:46 a.m., the defendant re-entered the Pontiac Aztek and drove west along the alley towards E Avenue. At this time, smoke is seen emanating from the uninhabited two-story residence attached to Saint Stephen's Episcopal Church.

Investigators determined that the only Pontiac Aztek registered in the Douglas area belonged to the defendant Eric Ridenour. Surveillance footage from a Douglas area

Walmart retail store showed Ridenour wearing the same clothes as the individual on the surveillance video. Investigators responded to the defendant's residence and observed a Pontiac Aztek parked at the residence. Douglas Police Department obtained and executed a search warrant on the residence.

At the residence, investigators located pants, in a clothes hamper, and shoes, that the defendant was wearing, and a hat in the Pontiac Aztek. The pants, shoes, and hat matched the ones worn by the defendant in the Walmart video just prior to the fire, as well as the individual observed in the daycare video footage entering the churches just before the fires were started.

During the execution of the initial search warrant on the defendant's residence, and a subsequent search warrant, a letter written by the defendant was found by agents. The letter referred to the defendant and his wife attending a church in Bisbee, Arizona. The defendant described in the letter how he believed "culture" was creeping into the church. According to the letter, the defendant spoke to the pastor of the church in Bisbee about his belief and as a result, he and his wife were asked to leave and find another place to worship.

On June 2, 2023, special agents located and interviewed the pastor of the Calvary Church in Bisbee where the defendant and his wife had previously worshipped. The pastor of the Calvary Church stated that women in that church are involved with the service, and sometimes led readings and prayer. The pastor stated that the defendant asked him to lunch one day and the defendant told the pastor that he didn't believe women should be in positions of authority in the church. After that day, the defendant and his wife never returned to the Calvary Church.

A neighbor of the defendant, a parishioner at Calvary Church in Bisbee, stated that the defendant was unhappy with the church's views towards worship as the defendant believed that women should not be preaching or leading in prayer. Another neighbor stated the defendant had started his own church, as he was unhappy with the local churches, and that the defendant "didn't like gays, didn't like politicians, and didn't like women in

general leading the church." The same neighbor also stated that the defendant believed the Bible prohibited women and gay people from preaching.

Evidence also exists that the defendant visited Saint Stephen's Episcopal Church in 2021 in order to inquire about the Church's beliefs. Some time that year, the pastor at Saint Stephen's met with an individual identified as the defendant's wife and a male matching the description of the defendant. The male, believed to be the defendant, took photos of the church interior and inquired whether women could be pastors in the Episcopalian Church, along with other pointed questions regarding participation in politics and religion by women and gay people. Notably, the pastor of the First Presbyterian Church is a woman and the pastor of Saint Stephen's Episcopal Church is openly gay. The defendant also asked questions about the layout of the pews and the altar. Finally, the defendant stated he would not attend church with a gay pastor.

Pursuant to the rights afforded to them under the Crime Victims Rights Act (CVRA), the pastors of both victim churches have provided input relaying that their parishioners are terrified of additional danger to their community by the defendant, they are fearful for their congregations, and they have been contacted by other faith leaders in the Douglas and surrounding community who are also fearful for their own churches and their parishioners. The pastors, and other faith leaders, have expressed fear of retribution should the defendant be released. The southeastern Arizona border towns are small communities and the church leaders are easily recognizable.

In addition, the Pre-Trial Services report shows the defendant has a prior conviction for misdemeanor Criminal Damage involving a domestic violence incident with an ex-girlfriend. From police reports of that incident, the defendant kicked the woman's door down during a domestic dispute after the two separated. The defendant has also been involved in other arrests and police contact including violating a protective order and pouring sugar in the gas tank of another ex-girlfriend, and threatening to beat up an ex-wife's fiancé during a dispute prompted by the defendant's refusal to abide by a child custody agreement.

As a result of the fires, Saint Stephen's Episcopal Church and First Presbyterian Church both suffered extensive damage as depicted in photographs attached to the criminal complaint in this matter (ECF Doc. 1). The fires continued to re-ignite throughout the evening and the following day after the arson. The structure of Saint Stephen's Episcopal Church was almost completely destroyed. The roof of the First Presbyterian Church collapsed in the early morning hours of May 23, 2023, and the fire caused extensive internal damage. Remains of what appeared to be lighter fluid canisters and lighters were found behind the altar at First Presbyterian Church.

**LAW AND ARGUMENT:**

A person facing trial is entitled to release under the least restrictive conditions or combination of conditions that will reasonably assure the appearance of the person as required *and the safety of the community*. 18 U.S.C. § 3142(c); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (emphasis added). The court may order detention of a defendant before trial if no condition or combination of conditions will reasonably assure the appearance of the person as required and safety of the community. 18 U.S.C. § 3142(e)(1). The government bears the burden of showing, by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence, that the defendant poses a danger to the community. 18 U.S.C.§ 3142(f); *Motamedi*, 767 F.2d at 1406-07.

The Ninth Circuit has described the Bail Reform Act factors a court is to consider in determining whether a defendant should be released on conditions or detained pending trial:

> Section 3142(g) specifies the various factors that must be considered in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of the community. These factors are: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

*United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (internal citations omitted). The weight of the evidence is the least important of these factors. *Motamedi*, 767 F.2d at 1408. However, the nature of the offense and the evidence of guilt is relevant "in terms of the likelihood that the person will fail to appear or will pose a danger to the community." *United States v. Cardenas*, 784 F.2d 937, 939 (9th Cir. 1986) (citing *Motamedi*, 767 F.2d at 1408).

Danger to the community encompasses a broader consideration than simply physical harm. The legislative history to 18 U.S.C. 3142 states that the language regarding the safety of the community "refers to the danger that the defendant might engage in criminal activity to the detriment of the community." S. Rep. No. 98-225, at 12 (1984) reprinted in 1984 U.S.C.C.A.N. 3182, 3195. The legislative history also states that the concept of "safety be given a broader construction than merely danger of harm involving physical violence." S. Rep. No. 98-225, at 12 (1984) reprinted in 1984 U.S.C.C.A.N. 3182, 3195 (citing *United States v. Provenzano*, 605 F.2d 85, 95-96 (3rd Cir 1979) (under previous statute, "danger" extended to non-physical harms such as corrupting a union)). The Ninth Circuit has held that danger to the community may encompass pecuniary or economic harm in certain cases. *United States v. Reynolds*, 956 F.2d 192, 192-93 (9th Cir. 1992).

Further, the Court shall hold a hearing to determine whether any, and the United States submits there are none, condition or combination of conditions of release will reasonably assure the appearance of the defendant and the safety of any other person and the community, as Arson is a crime of violence for purposes of 18 U.S.C. § 3142. *United States v. Varnes*, No. 10–0203M, 2010 WL 2035573, at *1 (D.Ariz.2010) (unpublished) ("The Court finds that the malicious burning of any building, vehicle, or other real or personal property proscribed by 18 U.S.C. § 844(i) is a "crime of violence" as defined by 18 U.S.C. § 3156(a)(4)"). *See also*: *Mbea v. Gonzales*, 482 F.3d 276, 280 (4th Cir.2007); *United States v. Mitchell*, 23 F.3d 1, 2 n. 3 (1st Cir.1994) (per curiam ) (holding that federal arson as set forth in 18 U.S.C. § 844(i) is a "crime of violence" under 18 U.S.C. §

3156(a)(4)); *United States v. Pereira*, 454 F.Supp.2d 40, 43 (D.Mass.2006); *United States v. Marzullo*, 780 F.Supp. 658, 662 & n. 7 (W.D.Mo.1991); *United States v. Shaker*, 665 F.Supp. 698, 702 n. 4 (N.D.Ind.1987). The Court may also consider the seriousness of the charged offense including potential penalties. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). In this case, the defendant is facing a mandatory minimum term of 5 years in prison and a maximum of 20 years.

The nature and circumstances of this offense are extremely concerning. The defendant brazenly set fire to two structures, historic church buildings that engage in interstate commerce, during the daytime hours on a weekday in the middle of Douglas' historic district. The fires were started with no regard to the safety of community members in the area, including the open and operating daycare center, with children present at the time, immediately next door to Saint Stephen's Episcopal Church. Church Square sits in a population-dense residential area. The churches themselves are attached to residential structures and areas. At the time of the fires, First Presbyterian Church had set up cots on-site in anticipation of housing migrant families who might require shelter as a result of Title 42 expiring; luckily, no one was staying there that morning. There is strong evidence that, in committing this act, the defendant was motivated by his animosity towards the churches' inclusive policies towards all individuals, including women and gay people.

The weight of the evidence against this defendant is strong. Although not exhaustive of the evidence against the defendant, the fact section of this motion shows that there is strong, corroborated evidence of the defendant's physical presence inside the churches shortly before the fires began. The defendant is seen on surveillance footage with items in a plastic bag entering the buildings. There is evidence that the defendant's clothing and vehicle match the person who entered the churches to ignite the fires. Further, the defendant and his wife appear to have had direct contact with the pastor of at least one of the churches and openly expressed his disapproval of and animosity towards the policies and practices of those communities of worship.

The history and characteristics of the defendant weigh against release. This defendant committed an exceptionally dangerous crime, with callous disregard for human life and others' properties, including the victim churches, the daycare directly next to the churches, other structures within Church Square, houses and apartments in the immediate area. He directed this deeply personal attack on communities of faith that serve as the bedrock for the Douglas community and surrounding areas. It is hard to overstate the impact of this crime on the close-knit religious community in southeastern Arizona. The defendant's criminal history and police contacts are also concerning. Although these incidents occurred a number of years ago, they show a pattern of someone who causes or threatens harm when he encounters conflict with others. Given the gravity and nature of the offense, the evidence that the defendant is driven by ideological fervor, and the blatant disregard for the safety of individuals and the community, the defendant's release would pose a significant risk of danger to the community.

**CONCLUSION:**

The government respectfully requests the defendant be detained pending trial as a danger to the community.

Respectfully submitted this 14th day of June, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

s/ Adam D. Rossi

ADAM D. ROSSI
Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 14th day of June, 2023, to:

All ECF Participants